```
         IN THE UNITED STATES DISTRICT COURT
      FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LOUIS D. SALVUCCI,            :   CIVIL ACTION
                              :   NO. 22-1891
         v.                   :
                              :
THE GLENMEDE CORP., et al.,   :
                              :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    SEPTEMBER 29, 2022

    Plaintiff Louis Salvucci, individually and as executor of the Estate of Carla Marie Salvucci ("Ms. Salvucci"), brings this action against Glenmede Corporation ("Glenmede") and the Compensation Committee of the Board of Directors of the Glenmede Corporation ("Compensation Committee") (collectively "Defendants"). Plaintiff brings Employee Retirement Income Security Act of 1974 ("ERISA") claims against both Defendants arising from a denial of benefits to Ms. Salvucci or her estate under Glenmede's Plan, a defined benefit pension plan sponsored by Glenmede and administered by the Compensation Committee (the "Plan").

    Before the Court is Defendants' motion to dismiss Plaintiff's Amended Complaint. For the following reasons, Defendant's motion will be granted.

## I.  BACKGROUND

Plaintiff is the executor and sole beneficiary of the Estate of Ms. Salvucci. Ms. Salvucci, Plaintiff's cousin, was employed by Glenmede from August 1986 to December 2015, when she became disabled and commenced long-term disability benefits. In November 2020, Ms. Salvucci passed away unmarried at 64 years old. Through her employment with Glenmede, Ms. Salvucci participated in the Plan, a defined benefit pension plan sponsored by Glenmede and administered by the Compensation Committee. Participants whose employment with Glenmede ended due to a disability "after being credited with five Years of Service for vesting" are entitled to remain as active participants in the Plan until they either choose to commence an early retirement benefit or reach their normal retirement age. See Am. Compl. ¶35; Defs. Mot. to Dismiss, Ex. A ("Plan") at § 3.5.

Ms. Salvucci, a participant with more than ten years of credited service, was able to elect a retirement day as early as age 55, the first "early retirement date" on which she might choose to commence an early retirement benefit under the Plan) or as late as age 65 (the Plan's "normal retirement date"). See Plan at §§ 1.20, 1.37. For an unmarried participant in the Plan, like Ms. Salvucci, the normal form of retirement benefit is a single life annuity, in the form of monthly payments, which terminate upon the participant's death. See Plan at § 6.2.

2

However, the Plan provides alternative options for the payment of accrued retirement benefits, including a 10-year certain annuity, paid over 120 months to the participant and/or the participant's beneficiary if the participant dies before collecting all 120 payments. See Plan at § 6.5.4. The Plan does not offer any survivor benefit if an unmarried participant passes away prior to commencing her pension benefit.[1]

Under the Plan, the Committee must provide participants with a Notice of Benefit Election Rights at least 30 days, and not more than 180 days, before the participant's Anticipated Annuity Starting Date, which is the first day of the month following the participant's normal retirement date. See Plan at § 6.4.1. Ms. Salvucci's Anticipated Annuity Starting Date was March 1, 2021. Thus, under the Plan, the Committee could have provided Ms. Salvucci with a Notice of Benefit Election Rights on September 3, 2020 until January 30, 2021. However, Ms. Salvucci passed away on November 19, 2020 **before** Glenmede provided her with a notice of benefit election rights.

According to the Amended Complaint, at the time of Ms. Salvucci's death, Plaintiff was her cousin and closest living relative. Plaintiff was also the named beneficiary of Ms. Salvucci's Life Insurance Company of North America (Cigna) life

---

[1] "If an unmarried Participant or a Participant with no Domestic Partner dies before his or her Annuity Starting Date, no benefits shall be payable to anyone under the Plan." See Plan at § 5.3.

3

insurance benefits under Glenmede's applicable ERISA-covered health and welfare plan. According to the Amended Complaint, Ms. Salvucci believed she or Plaintiff would receive her accrued pension benefit under the Plan, and Defendants were aware of Ms. Salvucci's ongoing battle with cancer and her close familial relationship with Plaintiff.

Plaintiff alleges that Defendants' failure to provide Ms. Salvucci with a Notice of Benefit Election Rights prior to her death was a breach of fiduciary duty because they knew or should have known her death was impending based on her condition and severely deteriorating health. Accordingly, Plaintiff alleges that Defendants' failures deprived Ms. Salvucci of the opportunity to designate a beneficiary for her pension benefits and that Plaintiff would have been the designated beneficiary.

Glenmede, however, contends that the Plan's Summary Plan Description ("SPD") communicated clearly to Ms. Salvucci all of the information required by ERISA and necessary for her to make an informed decision about her retirement benefit. See generally Defs. Mot. to Dismiss, Ex. B ("SPD"). According to Glenmede, the SPD informed Ms. Salvucci in plain language that she had a right to early retirement,[2] that no survivor benefit would be payable

---

[2] The SPD explains: "May I Retire Early? If you terminate employment with the Company and you have 10 or more Years of Credited Service with the Company, you may begin receiving retirement benefits as early as age 55. Your benefit will be computed in the same way that we compute a normal retirement pension, but the amount of your payments will be reduced to reflect the longer period

4

if she died before commencing her Plan benefit because she was unmarried,[3] that she had a right to elect a 10-year certain annuity,[4] and that there was a deadline for electing an optional form of benefit,[5] such as the 10-year certain and continuous annuity.

At the time of her death, Ms. Salvucci had not elected to commence her Plan benefit. Because she was not married, there was no benefit payable under the Plan to her estate.

On August 3, 2021, Plaintiff filed an administrative claim with the Compensation Committee. The Compensation Committee denied Plaintiff's claim and administrative appeal, explaining

---

of time benefits are expected to be paid to you. Your reduced pension will be determined using appropriate actuarial assumptions, and other adjustment factors as may be required by law. If you want to begin to receive your benefits early, you must inform Human Resources at least one month in advance." See SPD at 10.

[3] In a section titled "Can I Lose Any Plan Benefits?," the SPD explains that "[y]ou will lose all . . . of your benefits under the Plan . . . [i]f you die before you become eligible to receive any Plan benefits, even though you were vested and entitled to a retirement benefit under the vesting chart given in this summary, and no death benefits are payable under Article VI [of the SPD]." Id. at 17. A section titled "Death Benefits" states that "[i]f you die before your benefits have commenced" a death benefit will be payable only if "married on the date of your death." Id. at 11.

[4] In a section titled "Payment of Benefits," the SPD explains: "May I Pick Some Other Form of Benefit? You may elect one of the following forms of benefit instead of those described above: . . . . 3. A reduced pension for your life with guaranteed payments for 120 months. The payments continue for your life. But if you die before you receive 120 payments, your beneficiary will receive the remaining payments until 120 payments are made." Id. at 12.

[5] The SPD explains that "[y]our election for an optional form of benefit payment must be made within the 180-day period prior to your elected date [of] benefit commencement." Id. at 13.

5

that no benefit was payable. Plaintiff then filed this action on May 15, 2022.

On June 24, 2022, Defendants filed a Motion to Dismiss Plaintiff's Complaint. In response, Plaintiffs filed an Amended Complaint on September 18, 2022. Defendants then filed the Motion to Dismiss before the Court on August 9, 2022.

## II. LEGAL STANDARD

A party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering such a motion, the Court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." DeBenedictis v. Merrill Lynch & Co., 492 F.3d 209, 215 (3d Cir. 2007) (quoting Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989)).

To withstand a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. Although a plaintiff is entitled to all reasonable inferences from the facts alleged, a plaintiff's legal conclusions are not entitled to deference, and

6

the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

The pleadings must contain sufficient factual allegations so as to state a facially plausible claim for relief. See, e.g., Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). In deciding a Rule 12(b)(6) motion, the Court limits its inquiry to the facts alleged in the complaint and its attachments, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon these documents. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

**III. DISCUSSION**

    **A.   Count I: Breach of Fiduciary Duty under § 502(a)(1)(B) of ERISA**

Defendants' motion to dismiss mentions Plaintiff's claims under § 502(a)(1)(B) in a footnote stating that Plaintiff did not allege a claim for Plan benefits under ERISA § 502(a)(1)(B).

7

See Def. Mot. to Dismiss, ECF No. 13 at n.4. To prevail on a claim under § 502(a)(1)(B), a plaintiff must show that (i) the plan is covered by ERISA; (ii) the plaintiff is a participant or beneficiary of the plan;[6] and (iii) the plaintiff was wrongfully denied a benefit owed by the plan. Thus, Defendant is correct that § 502(a)(1)(B) claims are for denials of benefits.

Nonetheless, Plaintiff avers that Defendants' breach of fiduciary duty led to the denial in question. In Plaintiff's Amended Complaint, Plaintiff alleges that he "has been wrongfully **denied benefits** as a result of Defendants' various breaches of fiduciary duties." (emphasis added).

A singular conclusory sentence on the denial of benefits allegation, however, is not sufficient to support a claim under 502(a)(1)(B). Plaintiff is not a participant or beneficiary of the plan. Even if he were, there are no facts alleging that Plaintiff or Ms. Salvucci were ever denied a benefit that was due. Instead, Plaintiff avers that Defendants breached a fiduciary duty by not informing Ms. Salvucci of her election rights and concede that the alleged breach of fiduciary duty is

---

[6] Under § 502(a)(1)(B), participants are defined as any employee or former employee of an employer, or member or former member of an employee organization, who is or may become eligible to receive a benefit from an employee benefit plan, or whose beneficiaries may be eligible to receive any such benefit. See 29 U.S.C. § 1002(7). Beneficiaries are defined as "**person[s] designated by a participant**, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." See 29 U.S.C. § 1002(8) (emphasis added).

8

the reason that Plaintiff or Ms. Salvucci was never actually owed the benefit in question.

Plaintiff mischaracterizes a denial of benefits claim as a breach of fiduciary duty claim under ERISA. Plaintiff was neither a beneficiary nor a participant as § 502(a)(1)(B) requires under the Plan, and thus fails to meet the second element to bring a denial of benefits claim. Plaintiff's claim in Count I brought under ERISA § 502(a)(1)(B) is dismissed without prejudice.

### B. Count I: Breach of Fiduciary Duty under § 502(a)(2) of ERISA

Defendants argue that Count I of the Amended Complaint must be dismissed to the extent Plaintiff tries to proceed under ERISA § 502(a)(2) because Plaintiff seeks only individual relief and not a benefit to the Plan as a whole. Section 502(a)(2) permits claims "for appropriate relief under" ERISA § 409, which in turn authorizes only breach of fiduciary duty claims that seek "to make good to [a] plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary." 29 U.S.C. § 1109(a).

As the Supreme Court has explained, it is "abundantly clear" from a "fair contextual reading of the statute" that § 502(a)(2) addresses "the possible misuse of plan assets, and

with remedies that would protect the entire plan," and not "the rights of an individual beneficiary." Mass Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 142 (1985); see also Hozier v. Midwest Fasteners, Inc., 908 F.2d 1155, 1162 n.7 (3d Cir. 1990) ("Because plaintiffs here seek to recover benefits allegedly owed to them in their individual capacities, their action is plainly not authorized by either § 409 or § 502(a)(2).").

Defendants aver that the allegations in Count I are specific to Ms. Salvucci, her participation in the Plan, and Plaintiff's assertion that he is entitled to a Plan benefit as a result of Ms. Salvucci's employment with Glenmede.  Plaintiff contends that the Amended Complaint seeks relief on a plan-wide basis because arbitrary and capricious acts like those of Glenmede in this case may trigger disqualification of the Plan by the IRS, resulting in significant financial harm to both Glenmede and all Plan participants. Pl's Resp., ECF No. 16 at 4.

Because of the clear statutory language and the fact that Plaintiff is truly seeking individual relief, Plaintiff's claim in Count I brought under ERISA § 502(a)(2) is dismissed without prejudice.

### C. Count I: Breach of Fiduciary Duties under § 502(a)(3) of ERISA

Defendants aver that Plaintiff cannot state a breach of fiduciary duty claim under ERISA § 502(a)(3) because Plaintiff's

Amended Complaint does not allege any facts to show that Defendants failed to fully satisfy their duties to Ms. Salvucci as a Plan participant. Neither party, however, fully addresses the legal requirement to successfully plead a claim under § 502(a)(3), explained below.

Section 502(a)(3) permits a plan participant or beneficiary to obtain individual relief, however, such individual relief is generally limited to equitable relief in circumstances where § 502 provides no other remedy.[7] See Varity Corp. v. Howe, 516 U.S. 489, 512 (1996). For example, in Mertens v. Hewitt Assocs., the Court held that "equitable relief" under § 502(a)(3) is limited to the forms of relief typically available in equity, such as injunction, restitution, and the like. 508 U.S. 248, 256 (1993). Because plaintiffs in that case were seeking compensatory damages to make the plan whole for its loss, the Court held that they had no remedy under § 502(a)(3). Id. at 255.

Here, Plaintiff's Amended Complaint seeks a judgment awarding him "an amount equal to the Term Certain Annuity benefit or other Plan benefit options **or such other equitable relief** as the Court deems just and proper." See Am. Compl., ECF No. 10 at 12 (emphasis added). As the Supreme Court has noted in Great-West Life & Annuity Ins. Co. v. Knudson:

> Almost invariably . . . suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty.

534 U.S. 204, 210 (2002) (quoting Bowen v. Massachusetts, 487 U.S. 879, 918-19 (1988) (Scalia, J., dissenting)) (internal quotation marks omitted).

The facts here are similar to Supreme Court and Third Circuit cases dismissing claims under § 502(a)(3) that plead for "appropriate equitable relief" because the parties were truly sought nothing other than compensatory damages. See Mertens, 508 U.S. at 254; Michaels v. Breedlove, No. 03-4891, 2004 WL 2809996, at *4 (3d Cir. Dec. 8, 2004).

Piercing through the labels Plaintiff uses to describe its requested relief reveals that Plaintiff seeks no more or less than reimbursement and compensatory damages for an alleged breach of fiduciary duty. As Great-West makes clear, this relief falls outside of the category of "equitable restitution" which might be recoverable under § 502(a)(3). Thus, it is unnecessary to evaluate whether Plaintiff alleged a breach of fiduciary duty under § 502(a)(3).[8]

---

[8] Even assuming §§ 502(a)(1)(B), 502(a)(2), or 502(a)(3) would allow for Plaintiff's claims, Plaintiff failed to allege a breach of fiduciary duty. The Amended Complaint mentions, albeit briefly, that Defendants knew or should have known of Ms. Salvucci's terminal illness and impending death but failed to inform her of the steps she needed to take in order to ensure her

12

### D. Count II: Estoppel and Discrimination under § 510 of ERISA

Defendants contend that Plaintiff does not allege any interference or adverse action affecting Ms. Salvucci's employment relationship with Glenmede, and thus fails to state a

---

Plan benefit would be payable. Plaintiff relies heavily on case law such as Weaver Bros. Ins. Associates, Inc. v. Braunstein, which holds that recent cases "illustrate that ERISA forbids a fiduciary from misleading or making material omissions to a plan participant or beneficiary." No. 11-5407, 2013 WL 1195529 at *13 (E.D. Pa. March 25, 2013).

"[W]hen a plan administrator . . . fails to provide information when it knows that its failure to do so might cause harm, the plan administrator has breached its fiduciary duty to individual plan participants and beneficiaries." Id. at 12. In that case, the court held that "Weaver Bros. breached its fiduciary duty to Deborah Braunstein . . . by failing to inform Deborah Braunstein of her conversion rights when the company knew that Deborah Braunstein was severely ill." Id. at 13. The court there found that "[t]he allegations in the pleadings and attachments support the inference that Deborah Braunstein would have exercised the conversion right if she had knowledge of it given her severe illness." Id.

There are, however, factual differences between Weaver Bros. and the instant case. In Weaver Bros., the court found the SPD to be noncompliant because it lacked the basic information that must be given to a plan participant. Here, the SPD is detailed and provided Ms. Salvucci notice of her potential benefits. In Weaver Bros., the court found that "the only way a plan participant would know about the terms of the Plan would be by referring to another document, the Certificate of Group Insurance." Id. at 9. The same is not true here because the SPD provided by Glenmede did not require Ms. Salvucci to reference anything else. The SPD in this case contains each and every piece of information that Plaintiff claims was not provided to Ms. Salvucci by Defendant's alleged breach of fiduciary duty.

In the Amended Complaint, Plaintiff alleges that he and Ms. Salvucci had a close familial relationship and that the company knew of such relationship. However, Plaintiff does not provide specific instances that would allow this Court to understand the extent or nature of Glenmede's supposed knowledge and reasonably infer that Glenmede breached a fiduciary duty.

Taking Plaintiff's allegations as true, they do not raise a right to relief above the speculative level for they consist of labels and conclusions. Plaintiff did not provide this Court with instances that employees at Glenmede saw firsthand Plaintiff and Ms. Salvucci's relationship. Instead, Plaintiff alleges in a conclusory manner that the employees at Glenmede knew that Ms. Salvucci and Plaintiff had a close familial relationship and that the employees also somehow knew that Ms. Salvucci would want her assets to transfer to Plaintiff upon her death. This is insufficient to support a breach of fiduciary duty claim under either §§ 502(a)(1)(B), 502(a)(2), or 502(a)(3).

13

claim under ERISA § 510. The Third Circuit has consistently held that the scope of § 510 is "limited to actions affecting the employer-employee relationship." Haberern v. Kaupp Vascular Surgeons Ltd. Defined Benefit Pension Plan, 24 F.3d 1491, 1503 (3d Cir. 1994); see also Becker v. Mack Trucks, 281 F.3d 372, 382 (3d Cir. 2000). To state a claim under § 510, plaintiffs must allege that their employer took unlawful employment action against them for the specific purpose of interfering with their attainment of a pension benefit right. Fischer v. Philadelphia Elec. Co., 96 F.3d 1533, 1543 (3d Cir. 1996).

Plaintiff does not meet the requirements of § 510 and indeed spends most of the complaint arguing that Glenmede did not take any action at all, which is the opposite of what § 510 condemns. Nonetheless, Plaintiff tries to argue that the fact that Ms. Salvucci "continued to be treated as a Glenmede employee for purposes of benefit accrual" under the Plan after her separation amounts to an adverse employment action.

This argument fails. Plaintiff concedes that Ms. Salvucci's employment ended in December 2015, and Ms. Salvucci's continuing "benefit accrual" status under the Plan's provisions governing employees who have separated due to disability cannot be the basis for a claim under § 510. The conduct alleged is not sufficient because "a fundamental prerequisite to a Section 510 action is an allegation that the employer-employee relationship

14

. . . was changed in some discriminatory or wrongful way." <u>Stout v. Bethlehem Steel Corp.</u>, 957 F. Supp. 673, 694 (E.D. Pa. 1997).

Because a § 510 claim does not exist where a participant's "loss of benefits is a mere consequence of, but not a motivating factor behind" an employer's alleged actions and Plaintiff did not allege any discriminatory motive, Plaintiff's Count II claims under ERISA § 510 are dismissed without prejudice. <u>See Dewitt v. Penn-Del Directory Corp.</u>, 106 F.3d 514, 522-23 (3d Cir. 1997).

**IV. CONCLUSION**

For the foregoing reasons, Defendants' motion will be granted. Plaintiff's §§ 502(a)(1)(B), 502(a)(2), 502(a)(3) and 510 claims are dismissed without prejudice.

An appropriate order follows.