```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LOUIS SALVUCCI,                  :   CIVIL ACTION
                                 :   NO. 22-1891
        Plaintiff,               :
                                 :
    v.                           :
                                 :
THE GLENMEDE CORP., et al.,      :
                                 :
        Defendants.              :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              FEBRUARY 23, 2023

**I. INTRODUCTION**

Plaintiff Louis Salvucci, individually and as executor of the Estate of Carla Marie Salvucci ("Ms. Salvucci"), brings this action against Glenmede Corporation ("Glenmede") and the Compensation Committee of the Board of Directors of the Glenmede Corporation ("Compensation Committee") (collectively "Defendants"). Plaintiff brings Employee Retirement Income Security Act of 1974 ("ERISA") claims against both Defendants arising from a denial of benefits to Ms. Salvucci's estate under Glenmede's Plan (the "Plan"), a defined benefit pension plan sponsored by Glenmede and administered by the Compensation Committee.

Plaintiff's Second Amended Complaint contains two of the four claims alleged in his First Amended Complaint: (I) Breach of Fiduciary Duty under § 502(a)(3) of ERISA; and (II) Estoppel and Discrimination under § 510 of ERISA. Defendants have filed a second motion to dismiss for failure to state a claim as to both counts. For the following reasons, Defendants' motion will be granted in full.

**II.     BACKGROUND[1]**

Plaintiff is the executor and sole beneficiary of the Estate of Ms. Salvucci. Ms. Salvucci, Plaintiff's cousin, was employed by Glenmede from August 1986 through July 2016, when she became disabled and commenced long-term disability benefits.

**A.     Ms. Salvucci's Employment with Glenmede**

According to the Second Amended Complaint, the employees at Glenmede were a tight-knit community, and Ms. Salvucci shared details of her personal life with friends and colleagues at Glenmede.

On multiple occasions, Ms. Salvucci introduced her colleagues to her cousin, Plaintiff, when the two had lunch near Glenmede's office in Philadelphia. In or around 2005, Plaintiff and Ms. Salvucci jointly purchased a home in Berks County,

---

[1] The facts alleged by the Plaintiffs and asserted herein are accepted as true and viewed in the light most favorable to Plaintiff.

2

Pennsylvania, using a $50,000 loan from Ms. Salvucci's Glenmede-sponsored 401k plan account to put toward the down payment. After the two moved into the home together, Plaintiff drove Ms. Salvucci to the train station to commute to work every day, which was widely known by her work colleagues.

In March 2006, Ms. Salvucci was diagnosed with ovarian cancer and took a brief disability-related leave of absence, returning to Glenmede in July of 2006. Plaintiff alleges that employees at Glenmede were aware that he cared for Ms. Salvucci through her illness. Although Ms. Salvucci's ovarian cancer was in a period of remission for almost ten years, the cancer recurred in or around the end of 2015, and Ms. Salvucci went on short-term disability leave through a Glenmede-sponsored Life Insurance Company of North America ("Cigna") plan. Employees of Glenmede sent a "get well" card to Ms. Salvucci when she went on leave.

Ms. Salvucci remained on short-term disability until her benefits expired in June 2016. Ms. Salvucci spoke to Glenmede's Director of Human Resources, Ann Marie Bell, to discuss the possibility and implications of Ms. Salvucci transitioning to long-term disability benefits. Ms. Salvucci informed Ms. Bell that she was undergoing experimental cancer treatment and was hopeful it might improve or resolve her condition so she might eventually return to work. In June 2016, Ms. Salvucci made a

3

claim for long-term disability benefits which was approved through the Glenmede-sponsored plan with Cigna.

The next month, Ms. Salvucci received a termination letter, stating that she was "eligible to receive a reduced pension benefit . . . . [or] defer retirement until you reach full retirement age."[2] A "Last Day/Benefits Information" guide was enclosed with the termination letter, which included information about a variety of benefits, and stated "[i]f you have five years of credited service and are vested, you will receive a pension estimate from Glenmede within a reasonable time. Please keep Glenmede apprised of your current address and marital status. For questions about your pension please contact Marianne McCafferty[.]"

After Ms. Salvucci was terminated, Plaintiff's brother, John Salvucci, Esq., reached out to Jim Belanger, corporate counsel for Glenmede, on behalf of Ms. Salvucci. Mr. Belanger informed John Salvucci that "the benefit would be approximately 30% less, if [Ms. Salvucci] started receiving the pension today as opposed to age 65." Several years later, in September 2019, Ms. Salvucci received a letter from Marianne McCafferty at Glenmede stating that the Plan was going to be frozen at the end

---

[2] According to Ms. Bell, Cigna advised Glenmede that a return-to-work date for Ms. Salvucci "was not anticipated in the near future."

4

of the year, that Ms. Salvucci "continued to earn years of service credit towards [her] benefit accrual in the pension plan because [she] remained on disability," and that Glenmede "recognize[d] that the pension plan is a key part of [her] retirement planning." The letter also included a frequently asked questions ("FAQ") document, yet the FAQs were silent on an unmarried participant's loss of their accrued benefit due to death prior to electing an alternative form of benefit and specifically designating a beneficiary under the Plan.

      B.    **Denial of Benefits to Ms. Salvucci's Estate**

In November 2020, Ms. Salvucci passed away unmarried at 64 years old. Through her employment with Glenmede, Ms. Salvucci participated in the Plan, a defined benefit pension plan sponsored by Glenmede and administered by the Compensation Committee. Participants whose employment with Glenmede ended due to a disability "after being credited with five Years of Service for vesting" are entitled to remain as active participants in the Plan until they either choose to commence an early retirement benefit or reach their normal retirement age.

Ms. Salvucci, a participant with more than ten years of credited service, was able to elect a retirement day as early as age 55, (the first "early retirement date" on which she might choose to commence an early retirement benefit under the Plan) or as late as age 65 (the Plan's "normal retirement date"). See

Defs. Mot. to Dismiss, Ex. A §§ 1.20, 1.37; ECF No. 22-2 [hereinafter "Plan"]. For an unmarried participant in the Plan, like Ms. Salvucci, the normal form of retirement benefit is a single life annuity, in the form of monthly payments, which terminate upon the participant's death. Id. § 6.2. However, the Plan provides alternative options for the payment of accrued retirement benefits, including a 10-year certain annuity, paid over 120 months to the participant and/or the participant's beneficiary if the participant dies before collecting all 120 payments. Id. § 6.5.4. The Plan does not offer any survivor's benefit if an unmarried participant passes away prior to commencing her pension benefit.[3]

Under the Plan, the Compensation Committee must provide participants with a Notice of Benefit Election Rights at least 30 days, and not more than 180 days, before the participant's Anticipated Annuity Starting Date, which is the first day of the month following the participant's normal retirement date. Id. at § 6.4.1. Ms. Salvucci's Anticipated Annuity Starting Date was March 1, 2021. Thus, under the Plan, the Committee could have provided Ms. Salvucci with a Notice of Benefit Election Rights on September 3, 2020 until January 30, 2021. However, Ms.

---

[3] "If an unmarried Participant or a Participant with no Domestic Partner dies before his or her Annuity Starting Date, no benefits shall be payable to anyone under the Plan." Plan § 5.3.

Salvucci passed away on November 19, 2020, <u>before</u> Glenmede provided her, or was required to provide her, with a notice of benefit election rights.

According to the Second Amended Complaint, at the time of Ms. Salvucci's death, Plaintiff was her cousin and closest living relative. Plaintiff was also the named beneficiary of Ms. Salvucci's Cigna life insurance benefits under Glenmede's applicable ERISA-covered health and welfare plan. Ms. Salvucci believed she or Plaintiff would receive her accrued pension benefit under the Plan, and Defendants were aware of Ms. Salvucci's ongoing battle with cancer and her close familial relationship with Plaintiff.

Plaintiff alleges that Defendants' failure to provide Ms. Salvucci with a Notice of Benefit Election Rights prior to her death was a breach of fiduciary duty because they knew or should have known her death was impending based on her condition and severely deteriorating health. Accordingly, Plaintiff alleges that Defendants' failures deprived Ms. Salvucci of the opportunity to designate a beneficiary, namely, Plaintiff, for her pension benefits.

Defendants, however, contend that the Plan's Summary Plan Description ("SPD") communicated clearly to Ms. Salvucci all of the information required by ERISA and necessary for her to make an informed decision about her retirement benefit. <u>See generally</u>

7

Defs. Mot. to Dismiss Ex. B, ECF No. 22-3 [hereinafter "SPD"]. According to Glenmede, the SPD informed Ms. Salvucci in plain language that she had a right to early retirement,[4] that no survivor benefit would be payable if she died before commencing her Plan benefit because she was unmarried,[5] that she had a right to elect a 10-year certain annuity,[6] and that there was a

---

[4] The SPD explains: "May I Retire Early? If you terminate employment with the Company and you have 10 or more Years of Credited Service with the Company, you may begin receiving retirement benefits as early as age 55. Your benefit will be computed in the same way that we compute a normal retirement pension, but the amount of your payments will be reduced to reflect the longer period of time benefits are expected to be paid to you. Your reduced pension will be determined using appropriate actuarial assumptions, and other adjustment factors as may be required by law. If you want to begin to receive your benefits early, you must inform Human Resources at least one month in advance." See SPD at 10.

[5] In a section titled "Can I Lose Any Plan Benefits?," the SPD explains that "[y]ou will lose all . . . of your benefits under the Plan . . . [i]f you die before you become eligible to receive any Plan benefits, even though you were vested and entitled to a retirement benefit under the vesting chart given in this summary, and no death benefits are payable under Article VI [of the SPD]." Id. at 17. A section titled "Death Benefits" states that "[i]f you die before your benefits have commenced" a death benefit will be payable only if "married on the date of your death." Id. at 11.

[6] In a section titled "Payment of Benefits," the SPD explains: "May I Pick Some Other Form of Benefit? You may elect one of the following forms of benefit instead of those described above: . . . . 3. A reduced pension for your life with guaranteed payments for 120 months. The payments continue for your life. But if you die before you receive 120 payments, your beneficiary will receive the remaining payments until 120 payments are made." Id. at 12.

deadline for electing an optional form of benefit,[7] such as the 10-year certain and continuous annuity.

At the time of her death, Ms. Salvucci had not elected to commence her Plan benefit. Because she was not married, there was no benefit payable under the Plan to her estate.

On August 3, 2021, Plaintiff filed an administrative claim with the Compensation Committee. The Compensation Committee denied Plaintiff's claim and administrative appeal, explaining that no benefit was payable. Based on the above facts and allegations, Plaintiff filed the present action under ERISA. The Court dismissed all counts in Plaintiff's first amended complaint without prejudice after Defendants' first motion to dismiss. See Mem. Op. 13 n.8, ECF No. 18 ("Plaintiff does not provide specific instances that would allow this Court to understand the extent or nature of Glenmede's supposed knowledge and reasonably infer that Glenmede breached a fiduciary duty.").

Plaintiff filed a Second Amended Complaint to replead two of the claims for breach of fiduciary duty. Defendants responded with a second motion to dismiss, which is now before the Court. As explained below, Plaintiff's repleaded allegations fail to facially state a plausible claim for relief.

---

[7] The SPD explains that "[y]our election for an optional form of benefit payment must be made within the 180-day period prior to your elected date [of] benefit commencement." Id. at 13.

9

### III. LEGAL STANDARD

A party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering such a motion, the Court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." DeBenedictis v. Merrill Lynch & Co., 492 F.3d 209, 215 (3d Cir. 2007) (quoting Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989)).

To withstand a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. Although a plaintiff is entitled to all reasonable inferences from the facts alleged, a plaintiff's legal conclusions are not entitled to deference, and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

The pleadings must contain sufficient factual allegations to state a facially plausible claim for relief. See, e.g., Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187,

10

190 (3d Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). In deciding a Rule 12(b)(6) motion, the Court limits its inquiry to the facts alleged in the complaint and its attachments, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon these documents. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

## IV. DISCUSSION

### A. Count I: Breach of Fiduciary Duties under § 502(a)(3) of ERISA

Defendants aver that Plaintiff cannot state a breach of fiduciary duty claim under ERISA § 502(a)(3) because Plaintiff's Second Amended Complaint does not allege any facts to show that Defendants failed to fully satisfy their duties to Ms. Salvucci as a Plan participant. Even construing the facts alleged in the Second Amended Complaint in the light most favorable to Plaintiff, the allegations fail to state a facially plausible claim for relief.

"ERISA's framework ensures that employee benefit plans be governed by written documents and summary plan descriptions, which are the statutorily established means of informing participants and beneficiaries of the terms of their plan and its benefits." In re Unisys Corp. Retiree Med. Benefit ERISA Litig., 58 F.3d 896, 902 (3d Cir. 1995). The SPD that Ms. Salvucci was provided unambiguously informed her that the Plan does not offer any survivor benefit in the event that an unmarried participant, like herself, passes away prior to commencing a pension benefit. And ERISA plan "participants have a duty to inform themselves of the details provided in their plans." Jordan v. Fed. Ex. Corp., 116 F.3d 1005, 1016 (3d Cir. 1997).

Nonetheless, Plaintiff argues that he states a plausible claim for breach of fiduciary duty based on Defendants' misrepresentations to Ms. Salvucci. To successfully state a claim based on misrepresentation under § 502(a)(3), a plaintiff must state a facially plausible claim for relief that: "(1) the defendant was 'acting in a fiduciary capacity'; (2) the defendant made 'affirmative misrepresentations or failed to adequately inform plan participants and beneficiaries'; (3) the misrepresentations or inadequate disclosure was material; and (4) the plaintiff detrimentally relied on the misrepresentation or inadequate disclosure." Boyles v. Am. Heritage Life Ins. Co.,

12

383 F. Supp. 3d 470, 483 (W.D. Pa. 2019) (quoting In re Unisys Corp. Retiree Med. Benefits ERISA Litig., 579 F3d. 220, 228 (3d Cir. 2009)), aff'd, 809 F. App'x 104 (3d Cir. 2020).

Defendants were acting in fiduciary capacities as the Plan Sponsor and Plan Administrator. Defendants do not contest this element. See Mot. to Dismiss 3, ECF No. 22-1.

Like his opposition to Defendants' first motion to dismiss, Plaintiff relies on Weaver Bros. Ins. Assocs. Inc. v. Braunstein for the proposition that recent case law such as "Jordan, Bixler, Unisys, and Gore illustrate that ERISA forbids a fiduciary from misleading or making material omissions to a plan participant or beneficiary." No. 11-cv-5407, 2013 WL 1195529, at *13 (E.D. Pa. March 25, 2013). As the Court found previously, there are "factual differences between Weaver Bros. and the instant case," as well as the cases that Weaver Bros. relies upon for the proposition that making a material omission is a breach of fiduciary duty. See Mem. Op. 13 n.8, ECF No. 18. The newly alleged facts regarding Glenmede's employees' knowledge of Ms. Salvucci's relationship with Plaintiff does not alter this analysis.

First, as the Court noted previously, "[i]n Weaver Bros., the court found the SPD to be noncompliant because it lacked the basic information that must be given to a plan participant . . . . [and] 'the only way a plan participant would know about the

13

terms of the Plan would be by referring to another document, the Certificate of Group Insurance.'" Id. (quoting Weaver Bros., 2013 WL 1195529 at *9). Here, the SPD was compliant with ERISA's requirements and provided Ms. Salvucci with detailed information about when she could make elections and the consequences for either opting to elect or failing to elect certain benefits.

Moreover, the court in Weaver Bros. stated that "[decedent] inquired about her life insurance benefits after she began collecting short-term disability payments and was told by [the sponsor] that her life insurance would be maintained as an active employee . . . . This was misleading because according to the terms of the Plan, [decedent] was not an active employee after [one year of long-term disability]." Weaver Bros., 2013 WL 1195529 at *13. Also, "it was only three months after her benefits lapsed that [decedent] succumbed to cancer." Id. In contrast, Ms. Salvucci was not actively misled by Defendants. Plaintiff alleges that "Glenmede informed Ms. Salvucci that if she elected an early retirement, her benefit would be approximately 30% less. It did not inform her that if she failed to elect early retirement and died before reaching age 65, her benefit would be (in its determination) 100% less." Pl.'s Resp. in Opp'n 8, ECF No. 23 (citation omitted). However, this alleged "misrepresentation" is less severe than the misrepresentation in Weaver Bros. because the information provided to Ms. Salvucci

14

was true, although arguably incomplete. And as the Third Circuit has established, ERISA plan "participants have a duty to inform themselves of the details provided in their plans." Jordan, 116 F.3d at 1016. Even if Glenmede had made a misrepresentation, "it is unreasonable for a plan participant to rely upon an employer's representation as to the contents of the Plan where the participant is in possession of a plan document containing express terms regarding the subject of the representation." Bicknell v. Lockheed Martin Grp. Benefits Plan, 410 F. App'x. 570, 575 (3d Cir. 2011) (citing Unisys, 58 F.3d at 907-08).

Finally, Plaintiff alleges that Glenmede "knew or should have known that the experimental treatment Ms. Salvucci pursued in 2016 was unsuccessful given that she remained unable to provide a return to work date, and Cigna informed them one should not be expected." See Second Am. Compl. ¶ 84, ECF No. 20. Unlike in Weaver Bros., where the decedent's battle with cancer was less than a year and a half, Ms. Salvucci had been battling her ovarian cancer for approximately ten years when she went on long-term disability leave and did not pass away until almost four years after taking leave. The exhibits contained in the Second Amended Complaint are communications from the years 2016 and 2017, several years before Ms. Salvucci eventually passed away. These facts and exhibits do not give rise to the reasonable inference that Glenmede "knew or should have known"

15

that Ms. Salvucci was in imminent danger of passing away more than four years later.

Because Plaintiff relies on facts from years before Ms. Salvucci's passing and an unreported case that is distinguishable from his in several respects, he fails to state a facially plausible claim for relief and Count I, the §502(a)(3), claim will be dismissed with prejudice.[8]

---

[8] The cases that Weaver Bros. relies on in reaching its determination are distinguishable from the present case. The Third Circuit in Jordan held that when a pilot had prior experience with changing his retirement benefits and the pilot "did not receive copies of the plans or their Summary Plan Descriptions before his election," the pilot's failure to inquire about the irrevocability of beneficiary designations after retirement was not fatal to his claim. 116 F.3d at 1016. Unlike in Jordan, Ms. Salvucci was provided with an adequate SPD and had shown no signs of wanting to elect early retirement.

In Unisys, the Third Circuit found that the plan administrator's behavior "constitute[d] a breach of fiduciary duty in its most basic form" when it "affirmatively and systematically represented to its employees that once they retired, their medical benefits would continue for life-- even though . . . the plans clearly permitted the company to terminate benefits." 57 F.3d 1255, 1264 (3d Cir. 1995). Although Defendants did not tell Ms. Salvucci through the email exchanges attached to the Second Amended Complaint that she would have no survivor benefit if she died before commencing retirement, there was not an affirmative and systematic factual misrepresentation like in Unisys.

The case most similar to the facts at hand is Estate of Gore v. Crozer Chester Medical Center, No. 96-cv-8192, 1997 WL 570906 (E.D. Pa. Sept. 5, 1997), where an employee at retirement age was diagnosed with large-cell lymphoma, and the employer, having knowledge of her diagnosis, remained silent about a provision in the employee's pension plan that precluded retirement benefits if the employee died prior to retirement. The court relied on Bixler v. Central Pennsylvania Teamsters Health & Welfare Fund, 12 F.3d 1292 (3d Cir. 1993) in holding "that a genuine issue of

### B. Count II: Estoppel and Discrimination under § 510 of ERISA

Defendants contend that Plaintiff fails to allege that Defendants took any unlawful employment action against Ms. Salvucci for the specific purpose of interfering with her attainment of a pension benefit right, and thus fails to state a claim under ERISA § 510. The Third Circuit has consistently held that the scope of § 510 is "limited to actions affecting the employer-employee relationship." Haberern v. Kaupp Vascular Surgeons Ltd. Defined Benefit Pension Plan, 24 F.3d 1491, 1503 (3d Cir. 1994); see also Becker v. Mack Trucks, 281 F.3d 372, 382 (3d Cir. 2000). To state a claim under § 510, plaintiffs must allege that their employer took unlawful employment action against them for the specific purpose of interfering with their attainment of a pension benefit right. Fischer v. Philadelphia Elec. Co., 96 F.3d 1533, 1543 (3d Cir. 1996).

In his Second Amended Complaint, Plaintiff's only new allegation is an assertion that Defendants "terminated [Ms.

---

material fact exists as to whether defendant knew of Ms. Gore's terminal illness and if so, whether its silence in the face of this knowledge constituted a breach of fiduciary duty." Id. at *4. Nonetheless, Gore is distinguishable because here, (1) the Court found that the SPD was unclear with respect to benefit commencement and (2) the employer was on notice that the decedent was about to pass away. See Hr'g Tr. 7:13-24, ECF No. 26. In any event, more recent, binding Third Circuit precedent supports the conclusion that Plaintiff's allegations fail to state a facially plausible claim for relief.

Salvucci's] employment" in July 2016 "in order to deprive her and/or her beneficiary of Plan benefits." See Second Am. Compl. ¶ 150; ECF No. 20. Without any facts to support this new allegation, however, this conclusory statement is insufficient to support a § 510 claim.

As the Court found in ruling on the first motion to dismiss, "a § 510 claim does not exist where a participant's 'loss of benefits is a mere consequence of, but not a motivating factor behind' an employer's alleged actions and Plaintiff did not allege any discriminatory motive. . . ." Mem. Op. 15, ECF No. 18 (quoting Dewitt v. Penn-Del Directory Corp., 106 F.3d 514, 522-23 (3d Cir. 1997)). Because Plaintiff failed to allege a discriminatory motive apart from legal conclusions couched as factual allegations, Plaintiff's Count II claims under ERISA § 510 will be dismissed with prejudice.

## V. CONCLUSION

For the foregoing reasons, Defendants' motion will be granted. Because this is Plaintiff's third attempt to state a facially plausible claim for relief, Plaintiff's claims will be dismissed with prejudice.

An appropriate order follows.